```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF PENNSYLVANIA


LISA LEEANN KELLER-PRICE,        )
                                 )
          Plaintiff,             )
                                 )
     vs.                         )    Civil Action No. 13-1117
                                 )
CAROLYN W. COLVIN, ACTING        )
COMMISSIONER OF SOCIAL SECURITY, )
                                 )
          Defendant.             )
```

O R D E R

AND NOW, this 30th day of September, 2014, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 12) filed in the above-captioned matter on January 27, 2014,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 10) filed in the above-captioned matter on December 4, 2013,

IT IS HEREBY ORDERED that said Motion is GRANTED. Accordingly, this matter is hereby remanded to the Commissioner of Social Security ("Commissioner") for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

**I.   Background**

On September 30, 2010, Plaintiff Lisa Leeann Keller-Price filed her claim for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.

Specifically, Plaintiff claimed that she became disabled on January 1, 2003, due to seizures, depression, anxiety, liver problems, sleep disorder, hepatitis C, bi-polar disorder, and osteoarthritis. (R. 157-62, 210, 214). After being denied initially on December 27, 2010, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on April 4, 2012. (R. 90-94, 97-98, 38-60). In a decision dated April 16, 2012, the ALJ denied Plaintiff's request for benefits. (R. 19-32). The Appeals Council declined to review the ALJ's decision on May 29, 2013. (R. 1-6). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II. **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Commissioner of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (noting that the court has plenary

2

review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education,

3

and work experience, engage in any other kind of substantial gainful work which exists in the national economy ....'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration ("SSA") has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. § 416.920. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. § 416.920(b). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. § 416.920(c). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. § 416.920(d). If a claimant meets a listing, a finding of

4

disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work. See 20 C.F.R. § 416.920(e). The claimant bears the burden of demonstrating an inability to return to his or her past relevant work. See Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. § 416.920(g). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. § 416.923.

### III. **The ALJ's Decision**

In the present case, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since September 13, 2010, the application date. (R. 21). The ALJ also found that

5

Plaintiff met the second requirement of the process insofar as she had several severe impairments, specifically, "degenerative joint disease of the left knee, back pain (degenerative changes at L4 and L5), chronic active hepatitis C, seizures (on medication, no seizures in over a year), depressive disorder, anxiety disorder, NOS, personality disorder, rule out malingering, and polysubstance dependence." He found, however, that Plaintiff's history of substance abuse did not constitute a severe impairment. (R. 21-22). The ALJ concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. (R. 22-23).

The ALJ found that Plaintiff retained the RFC to perform light work, with a sit-stand option at her discretion, and that she was relegated to simple, routine, repetitive tasks in a low stress work environment involving no contact with the general public. (R. 23-30). Based on this RFC, Plaintiff established that she is incapable of returning to her past employment; therefore, the ALJ moved on to Step Five. (R. 30-31). The ALJ then used a vocational expert ("VE") to determine whether or not there were a significant number of jobs in the national economy that Plaintiff could perform. The VE testified that, based on Plaintiff's age, education, and RFC,[1] Plaintiff could perform

---

[1] As the Court will discuss below, the RFC considered by the VE was not the RFC ultimately found by the ALJ.

jobs, including assembler, packer, and sorter/grader, that exist in significant numbers in the national economy. (R. 31-32, 57). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 32).

IV. **Legal Analysis**

Plaintiff raises several arguments as to why she believes that the ALJ erred in finding her to be not disabled. Although the Court need not reach each of these arguments, it does find that substantial evidence does not support the ALJ's reliance on the testimony of the VE in determining the jobs that Plaintiff could perform at Step Five or his consideration of certain record evidence. Accordingly, the Court will remand the case for further consideration.

The primary issue is the inconsistency between the RFC, as determined by the ALJ, and the hypothetical question asked by the ALJ to the VE. As noted above, the ALJ, in determining Plaintiff's RFC, limited her to light work, with a sit-stand option at her discretion, and relegated her to simple, routine, repetitive tasks in a low stress work environment involving no contact with the general public. (R. 23). The ALJ asserts that the VE testified that a claimant with this RFC could perform the positions of assembler, packer, and sorter/grader and that, therefore, Plaintiff could perform jobs existing in significant

7

numbers in the national economy. (R. 31-32). However, that is not what the VE said.

The ALJ's hypothetical to the VE actually omitted several limitations later included in the RFC. Specifically, the ALJ asked the VE whether a claimant limited to "low-stress, non-exertionally, and exertionally would be light with a sit/stand option" could perform any jobs. The VE responded that such a person could do assembly work and also the work of a packer and a sorter/grader. (R. 57). This hypothetical clearly omitted the limitation to simple, routine, repetitive tasks involving no contact with the general public. Plaintiff's counsel clarified the issue in regard to the complexity of the tasks she could perform, confirming with the VE that the positions that he found Plaintiff could perform would entail simple, routine, repetitive tasks. (Id.). At no point, however, was the VE asked, by the ALJ or Plaintiff's counsel, to consider whether these, or any other positions, could be performed by a claimant who could have no contact with the general public.

A hypothetical question to a VE must accurately portray the claimant's physical and mental impairments supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). "Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not

8

considered substantial evidence." Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002). Here, the ALJ expressly found that Plaintiff was limited to no contact with the public, but the hypothetical question did not portray such a restriction. Although Defendant asks the Court to consider this omission to constitute harmless error, the Court declines to do so. Plaintiff's inability to interact with the general public clearly is potentially relevant to the Step Five determination. It is far more appropriate for the VE, in the first instance, to determine whether this additional limitation would impact his testimony, and for the ALJ to determine the impact of that testimony.[2] Indeed, it is not the Court's place to engage in its own analysis as to what impact being restricted to no interaction with the general public would have on Plaintiff's ability to perform the jobs identified by the VE. See Fargnoli v. Massanari, 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.")(quoting SEC v. Chenery Corporation, 318 U.S. 80, 87 (1943)).

Another reason why the Court cannot find harmless error is that the omission in the hypothetical is not the only error here. As Plaintiff points out, the ALJ also failed to address

---

[2] This is especially the case given Plaintiff's limitation, not merely to limited or occasional interaction with the general public, but to *no* such interaction.

9

numerous Global Assessment of Functioning ("GAF") scores contained in the record.  Specifically, although the ALJ referenced the score of 60 assigned to Plaintiff when she was hospitalized at Western Psychiatric Institute and Clinic in March of 2010 (R. 553), he made no mention of the numerous other GAF scores Plaintiff received between March of 2008 and October of 2010, including one score as low as 35 and several scores in the 40s.  (R. 474, 477, 482, 488, 499, 503, 505, 509, 518, 705, 708, 713, 722, 728, 756).

GAF scores "are used by mental health clinicians and doctors to rate the social, occupational and psychological functioning of adults." <u>Irizarry v. Barnhart</u>, 233 Fed. Appx. 189, 190 n.1 (3d Cir. 2007).  <u>See</u> <u>also</u> 65 Fed. Reg. 50746-01. "The GAF scale, designed by the American Psychiatric Association, ranges from 1 to 100, with a score of 1 being the lowest and 100 being the highest." <u>West v. Astrue</u>, 2010 WL 1659712, at *4 (E.D. Pa. Apr. 26, 2010).

The GAF score system does raise some problems when used in the social security context because the scores do not directly correlate to a determination of whether an individual is or is not disabled under the Act:

> The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to

>     the severity requirements in our mental disorders
>     listings.

65 Fed. Reg. 50746-01. While under certain circumstances a GAF score can be considered evidence of disability, standing alone, a GAF score does not evidence an impairment seriously interfering with a claimant's ability to work. See Lopez v. Barnhart, 78 Fed. Appx. 675, 678 (10th Cir. 2003). GAF scores may indicate problems that do not necessarily relate to the ability to hold a job. See id.; Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010); Zachary v. Barnhart, 94 Fed. Appx. 817, 819 (10th Cir. 2004); Wilkins v. Barnhart, 69 Fed. Appx. 775, 780 (7th Cir. 2003); Howard v. Commissioner of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002); Power v. Astrue, 2009 WL 578478, at *8 (W.D. Pa. Mar. 5, 2009).

Indeed, even relatively low GAF scores do not necessarily indicate functional impairment. A GAF score between 41 and 50 reflects "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR** any serious impairment in social, occupational, **or** school functioning (e.g., no friends, unable to keep a job)." A GAF score between 31 and 40 reflects "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) **OR** major impairment in several areas, such as work **or** school, family relations, judgment, thinking, **or** mood (e.g., depressed

man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th ed., Text Rev. 2000)(emphasis added). Accordingly, the mere fact that a treating mental health care provider assigned certain GAF scores would not necessarily indicate that Plaintiff is disabled.

Therefore, while a GAF score can assist an ALJ in understanding the limitations contained in the opinions of medical professionals, the actual number itself does little to describe the specific functional limitations caused by the claimant's impairments. See <u>Howard</u>, 276 F.3d at 241 ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy."). Nonetheless, a GAF score is evidence that an ALJ should consider in determining a claimant's impairments and limitations in setting forth the claimant's RFC and in fashioning a hypothetical question to the VE. See <u>Wiggers v. Astrue</u>, 2010 WL 1904015, at *8 (W.D. Pa. May 10, 2010) (quoting <u>Watson v. Astrue</u>, 2009 WL 678717, at *5 (E.D. Pa. Mar. 13, 2009)).

By addressing just one GAF score received by Plaintiff – the highest score – the ALJ simply did not account for the

possibility that those scores indicated more serious work related impairments and/or restrictions than what the ALJ found. Unlike cases such as Gilroy v. Commissioner of Soc. Sec., 351 Fed. Appx. 714 (3d Cir. 2009), and Rios v. Commissioner of Soc. Sec, 444 Fed. Appx. 532 (3d Cir. 2011), the ALJ did not overlook just one or two GAF scores, but rather well over a dozen, nor was the one score he did cite, a score of 60, representative of the other scores Plaintiff had received. No less than 10 of the unmentioned scores were below 50 and one was below 40. While the failure to discuss a GAF score may not always warrant a remand, "[a]n ALJ may not 'cherry-pick' higher GAF scores in his analysis and ignore GAF scores that may support a disability." Rivera v. Astrue, 2014 WL 1281136, at *8 (E.D. Pa. Mar. 27, 2014).

Where, as here, there is potentially conflicting evidence in the record, the ALJ must explain which evidence he accepts and rejects and the reasons for his determination. See Cruz v. Commissioner of Soc. Sec., 244 Fed. Appx. 475, 479 (3d Cir. 2007) (citing Hargenrader v. Califano, 575 F.2d 434, 437 (3d Cir. 1978)). See also Fargnoli, 247 F.3d at 42. The ALJ failed to indicate whether the GAF scores of 50 and below contained in the record were consistent with his RFC findings or whether they were inconsistent and therefore rejected. The ALJ is not necessarily obligated to adopt any different findings in regard

13

to Plaintiff's RFC or to include any additional limitations, but he must make and discuss that determination in light of all the evidence, including the GAF scores. It is the need for further explanation that mandates the remand on this issue.[3]

## V. Conclusion

In short, the record simply does not permit the Court to determine whether the ALJ's reliance on the testimony of the VE in determining the jobs that Plaintiff could perform at Step Five or his consideration of Plaintiff's GAF scores are supported by substantial evidence, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case. The Court hereby remands this case to the ALJ for reconsideration consistent with this Order.

s/Alan N. Bloch
United States District Judge

ecf:    Counsel of record

---

[3] Although the Court takes no position as to Plaintiff's remaining issues, the ALJ should, of course, ensure that whatever limitations as to concentration, persistence, and pace Plaintiff may have are properly addressed and that her activities of daily living are properly discussed on remand.